# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WAYNE M. ANDERSON, | |
| **Plaintiff,** | |
| v. | Civil Action No. 12-1243 (JDB) |
| ROBERT GATES, Secretary of Defense, et al., | |
| **Defendants.** | |

## MEMORANDUM OPINION

Plaintiff Wayne Anderson, proceeding pro se, brings this action against former Secretary of Defense Robert Gates,[1] Secretary of the Army John M. McHugh, U.S. Army Colonel Hans E. Bush, U.S. Army Brigadier General Sean Mulholland, and U.S. Army Colonel Gregory Julian in their individual and official capacities, as well as "[o]ther [d]efendants as yet unknown" in their individual capacities. Defendants are sued in their individual capacities for damages and in their official capacities for declaratory and injunctive relief. Anderson's claims originate from the termination of his status as a military embed-journalist in Afghanistan. Before the Court is [13] defendants'[2] motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), (2), (5), and (6). For the reasons set forth below, the Court will grant defendants' motion.

---

[1] Pursuant to Federal Rule Civil Procedure 25(d), the Court substitutes the current Secretary of Defense, Charles Hagel, for former Secretary Gates in his official capacity.

[2] All defendants are represented in their official capacities by defense counsel from the U.S. Attorney's Office, and Brigadier General Mulholland, Colonel Julian, and Colonel Bush are also represented in their individual capacities by that counsel. Former Secretary Gates and Secretary McHugh are not represented in their individual capacities. See Defs.' Mot. to Dismiss ("MTD") [ECF No. 13] at 12-13.

## BACKGROUND

On or about January 2010, Anderson, a freelance American journalist, applied for "military embed-journalist accommodation status" in Afghanistan. Compl. [ECF No. 1] ¶ 24. As part of the application process, Anderson signed a copy of the International Security Assistance Force ("ISAF") Media Accommodation and Ground Rules Agreement ("MAGRA"), confirming that he would abide by the ISAF Media Ground Rules ("Media Ground Rules"). Id. ¶¶ 25, 55, 57. ISAF is an international stabilization force in Kabul, Afghanistan that was created by the United Nations Security Council in December 2001. Id. ¶ 25 n.1. The Media Ground Rules were promulgated "to encourage the democratic ideals of open reporting and transparency, while balancing the needs of operational security and service member privacy," and "[v]iolations of any of the . . . rules may result in termination of accommodated status." Id. ¶ 25; Media Ground Rules, Ex. A to MTD [ECF No. 13-2] at 1.[3] After Brigadier General Mulholland authorized Anderson's embed accommodation status, Anderson flew to Kabul and was embedded with the Minnesota Army National Guard. Compl. ¶¶ 26-27. Anderson's role in Afghanistan was to provide news coverage of Army personnel and operations for several newspapers and live broadcasts. Id. ¶ 26.

On or about July 20, 2010, while Anderson was embedded in Afghanistan, he filmed an ambulance offloading American personnel who had been attacked in "a controversial shooting." Id. ¶ 29. On July 29, 2010, Anderson's story about the shooting and video of the ambulance offloading were published on The Washington Times website. Id. ¶ 34. The next day, a U.S. Army captain[4] told Anderson that his embed status would be terminated. Id. Defendants

---

[3] The Court only cites the Media Ground Rules, an exhibit submitted by defendants that Anderson has not contested, because it provides helpful context. The Court will not rely on the content of the exhibit for the purposes of resolving any part of the motion to dismiss under Rule 12(b)(6).
[4] Anderson did not name this individual as a defendant in this action.

contend that Anderson's embed status was terminated because his video showed the identifiable faces of wounded soldiers, and the dissemination of such a video violated Media Ground Rules ¶¶ 22(a) and (c), which require accommodated media to receive written permission from wounded soldiers or, in the case of a fatality, to notify the appropriate next of kin before dissemination. MTD at 4. Anderson denies that his video contained images of identifiable wounded military personnel. Pl.'s Opp'n to MTD ("Opp'n") [ECF No. 16] at 8.

On or about July 31, 2010, Anderson had a "15-minute meeting" with Colonel Bush that "took place outdoors and alongside a busy military-airport terminal." Compl. ¶ 36. Colonel Bush[5] "accused [Anderson] of violating" the Media Ground Rules by "posting [a] video of wounded personnel."[6] Id. ¶ 37. Colonel Bush then signed a memorandum terminating Anderson's embed status "without seeing or requesting to see the exculpatory video footage or asking for any substantial evidence from [Anderson]." Id. ¶ 39. Anderson subsequently returned home to the United States, where he appealed the termination. Id. ¶¶ 40, 41. On or about January 20, 2011, Colonel Julian, sitting in Brussels, Belgium, decided the appeal and upheld Anderson's embed-status termination. Id. ¶¶ 41, 42; Opp'n at 11.

Anderson then filed this three-count lawsuit. Count I alleges that defendants in their individual capacities violated 42 U.S.C. § 1983 because "they caused the termination of [Anderson]'s journalist-embed status without just cause of his constitutionally protected speech; and . . . refus[ed] or neglect[ed] to prevent such deprivations and denials to [Anderson] in violation of the First Amendment free speech and freedom of the press rights." Id. ¶ 52. Count I

---

[5] Anderson states that, at this meeting, "[d]efendants accused" him of violating the Media Ground Rules. Because Colonel Bush is the only defendant alleged to be present at this meeting, the Court will assume Anderson intended to refer to Colonel Bush in this situation.

[6] Anderson argues that posting videos of wounded personnel is not a violation of the Media Ground Rules; rather, posting a video of identifiable wounded military personnel is a violation. Compl. ¶ 37. He states that "[d]efendants later declined to amend the erroneous charge and properly state an accurate, valid charge." Id.

also alleges that defendants in their individual capacities violated 42 U.S.C. § 1983 because "[Anderson] possesses a constitutionally protected interest and he was subsequently deprived of that interest without a meaningful hearing . . . in violation of his procedural due process rights as afforded by the Fifth Amendment." Compl. ¶ 50. Count II alleges a breach of contract claim, stating that, by signing the MAGRA, Anderson entered into a contract with the U.S. Army, and that defendants breached that contract. Id. ¶¶ 55-60. Count III "seeks a judicial declaration that defendants' conduct deprived Anderson of his rights under the U.S. Constitution and the laws of the United States." Id. ¶ 63. Anderson also asks that the Court "enjoin [d]efendants to reverse the Memorandum terminating [Anderson]'s embed accommodation status" and award Anderson costs. Id. at 16.[7]

Defendants have filed a motion to dismiss for lack of personal jurisdiction over defendants in their individual capacities under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(2), for failure to state a claim upon which relief can be granted under Rule 12(b)(6), and for lack of subject-matter jurisdiction under Rule 12(b)(1).

## STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of an action for ineffective service of process. "[T]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of [Federal] Rule [of Civil Procedure] 4 and any other applicable provision of law." Light v. Wolf, 816 F.2d 746, 751 (D.C. Cir. 1987) (internal quotation marks and citation omitted). "If dismissing [a plaintiff's] claim without prejudice due to insufficient service would lead to the refiling of a meritless claim, however, this Circuit has held that it is proper to consider other means of dismissing the [claim]."

---

[7] The final paragraph of the complaint is not numbered, so the Court cites the relevant page number.

Dominguez v. Dist. of Columbia, 536 F. Supp. 2d 18, 22 (D.D.C. 2008) (citing Simpkins v. Dist. of Columbia Gov't, 108 F.3d 366, 369-70 (D.C. Cir. 1997)).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary, plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to provide the "grounds" of "entitle[ment] to relief." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack of subject-matter jurisdiction. Although the Court must construe the complaint liberally, a plaintiff bears the burden of establishing the elements of federal jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The Court may look beyond the allegations in the complaint to resolve a motion to dismiss for lack of subject-matter jurisdiction. Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987).

## <u>ANALYSIS</u>

The Court will first discuss its lack of personal jurisdiction over defendants in their individual capacities under Rule 12(b)(5) because they have not been properly served.[8]  And although the Court lacks personal jurisdiction over defendants in their individual capacities, it will nonetheless analyze Anderson's constitutional claims against them and dismiss those claims under Rule 12(b)(6).  <u>See</u> <u>Simpkins</u>, 108 F.3d at 370 (holding that district court's dismissal of constitutional claims on the merits rather than for insufficiency of process was proper where claims were meritless).  Next, the Court will dismiss Anderson's breach of contract claim for lack of subject-matter jurisdiction under Rule 12(b)(1).  Finally, the Court will also dismiss Anderson's claims for injunctive and declaratory relief for lack of subject-matter jurisdiction.

## I.      <u>Personal Jurisdiction over Defendants in Their Individual Capacities</u>

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."  <u>Mann v. Castiel</u>, 681 F.3d 368, 372 (D.C. Cir. 2012) (quoting <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.</u>, 526 U.S. 344, 350 (1999)). "Under the federal rules enacted by Congress, federal courts lack the power to assert personal jurisdiction over a defendant 'unless the procedural requirements of effective service of process are satisfied.'"  <u>Id.</u> (quoting <u>Gorman v. Ameritrade Holding Corp.</u>, 293 F.3d 506, 514 (D.C. Cir. 2002)).  Although "[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings," <u>Moore v. Agency for Int'l Dev.</u>, 994 F.2d 874, 876 (D.C. Cir. 1993), they still bear the burden of demonstrating that service was properly effected, and courts regularly dismiss actions when that burden is not met, <u>Cornish v. United States</u>, 885 F. Supp. 2d 198, 204-05 (D.D.C. 2010) (dismissing pro se

---

[8] Because the Court lacks personal jurisdiction over defendants in their individual capacities under Rule 12(b)(5), it is unnecessary to resolve defendants' Rule 12(b)(2) argument, which also contends that the Court lacks personal jurisdiction over defendants in their individual capacities.

plaintiff's claims for ineffective service of process); <u>Cruz-Packer v. Dist. of Columbia</u>, 539 F. Supp. 2d 181, 186-87 (D.D.C. 2008) (same).

When a federal employee is "sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f) or (g)." Fed. R. Civ. P. 4(i)(3). Rule 4(e) governs the service relevant here. It provides that service may be effected on the officer or employee by

> delivering a copy of the summons and of the complaint to the individual personally; leaving a copy of each at the individual's dwelling or usual place of abode with some person of suitable age and discretion who resides there; or delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2). The Rule also permits service to be effected according to the law of "the state where the district court is located or where service is made." <u>Id.</u> at 4(e)(1). Applicable here, the Civil Rules of the District of Columbia Superior Court provide that service can be effected upon an individual "by mailing a copy of the summons, complaint and initial order to the person to be served by registered or certified mail, return receipt requested," or "by mailing a copy of the summons, complaint and initial order by first-class mail, postage prepaid, to the person to be served, together with two copies of a Notice and Acknowledgment . . . and a return envelope, postage prepaid, addressed to the sender." D.C. Super. Ct. Civ. R. 4(c)(3), 4(c)(4).

Service must be effected "within 120 days after the complaint is filed" unless "the plaintiff shows good cause for the failure" to meet this deadline. Fed. R. Civ. P. 4(m); <u>see also</u> <u>Strong-Fischer v. Peters</u>, 554 F. Supp. 2d 19, 23 (D.D.C. 2008) (holding that a plaintiff carries the burden of showing good cause for failure to meet the deadline). "Good cause exists when

some outside factor . . . rather than inadvertence or negligence, prevented service." Mann, 681 F.3d at 374 (internal quotation marks and citation omitted) (citing as examples of good cause "a defendant's intentional evasion of service" and a pro se plaintiff's reliance on a U.S. Marshal to effect service). "[A] plaintiff must employ a reasonable amount of diligence in determining . . . how to effect service" before good cause for failure to meet the deadline may be found. Prunte v. Universal Music Group, 248 F.R.D. 335, 338-39 (D.D.C. 2008). "In sum, [g]ood cause means a valid reason for delay." Mann, 681 at 375 (internal quotation marks and citation omitted).

Defendants argue that Anderson failed to effect proper service on them in their individual capacities because he attempted to serve them only at what he believed to be their work addresses. MTD at 10 (citing 9/14/2012 Affirmations of Service [ECF No. 4] at 3 (copy of summons and complaint mailed to former Secretary Gates at the Pentagon), 7 (copy of summons and complaint mailed to Secretary McHugh at the Pentagon), 8 (copy of summons and complaint mailed to Colonel Bush at the Pentagon), 12-13 (copy of summons and complaint mailed to Brigadier General Mulholland at the Pentagon and sent via email), 18 (copy of summons and complaint mailed to Colonel Julian at the Pentagon); 10/15/2012 Affirmations of Service [ECF No. 6] at 1 (copy of summons and complaint mailed to Colonel Julian at U.S. Southern Command), 3 (copy of summons and complaint mailed to Brigadier General Mulholland at the Army Litigation Division)).

Anderson does not dispute that he attempted to serve defendants only at what he believed to be their work addresses, but nonetheless argues that he perfected service on all defendants except Brigadier General Mulholland, whose "whereabouts w[ere] impossible" to ascertain "for a normal civilian." Opp'n at 13-14. Anderson states that he mailed the summons and complaint to Brigadier General Mulholland at the Pentagon, but it was returned to him. Id. He further

contends that his method of service for all defendants was proper because his attempts were in good faith and defendants' employers would not provide him with defendants' "personal or regular contact addresses." Id. As of April 9, 2013, however, Anderson was aware of the contact information for an agent designated to accept personal service for Colonel Julian, Colonel Bush, and Brigadier General Mulholland.[9] Id. at 14-15. Anderson was also on notice that his attempts at service on all defendants in their individual capacities had been insufficient. See Amended Notice of Appearance [ECF No. 3] at 1 n.1; Consent Mot. for Enlargement of Time [ECF No. 5] at 1 n.2; 2d Consent Mot. for Enlargement of Time [ECF No. 8] at 1 n.2; 3d Consent Mot. for Enlargement of Time [ECF No. 10] at 1 n.2; 4th Consent Mot. for Enlargement of Time [ECF No. 11] at 1 n.2. Nonetheless, Anderson did not attempt to serve the designated agent. He also did not attempt to perfect service on defendants by other means. Despite these failings, he now asks the Court to grant him an extension of time to "cure any failure" if it finds that he did not properly serve defendants. Opp'n at 15.

Upon review of the record, the Court finds that Anderson failed to adequately serve the individual defendants. He did not satisfy the requirements of Rule 4(e) by serving any of the defendants personally, leaving a copy of the summons and complaint at the dwelling or usual place of abode of any defendant, or serving an authorized agent of any of the defendants. See Fed. R. Civ. P. 4(e). Nor did Anderson demonstrate that he properly effected service on any of the defendants under D.C. law because he has not submitted any proof that defendants signed for or otherwise received the mailings or that any recipients of the mailings were authorized to accept service on behalf of defendants in their individual capacities. See Wilson-Greene v. Dep't of Youth Rehab. Servs., 2007 WL 2007557, at *2 (D.D.C. July 9, 2007) (stating that "[a]lthough

---

[9] Defense counsel told Anderson that he did not have a representation agreement with former Secretary Gates or Secretary McHugh and thus was unable to arrange an agent to accept individual service on their behalf. Opp'n at 14-15.

the Civil Rules of the D.C. Superior Court allow[] service by mail, such service must be made on the individual to be served[,]" which requires evidence "that a copy of the complaint and the summons was delivered to the individual [defendants]"); see also Toms v. Hantman, 530 F. Supp. 2d 188, 191 (D.D.C. 2008) (holding that the plaintiff did not properly effect service under D.C. law by sending the summons and complaint by certified mail to the defendant's business address). Moreover, Anderson admits that he did not serve the agent designated by defendants to accept service on behalf of Colonel Julian, Colonel Bush, and Brigadier General Mulholland. It is unclear why Anderson did not make use of this agent, particularly with respect to Brigadier General Mulholland, whom Anderson admits he was not able to properly serve. Anderson does not provide good cause for why he did not act to perfect service, other than to assert, erroneously, that he has already perfected service.

Because defendants in their individual capacities have not been properly served, this Court lacks personal jurisdiction over them. However, the Court will nonetheless examine Anderson's constitutional claims against defendants in their individual capacities because, although Rule 4(m) and Rule 12(b)(5) permit courts to dismiss without prejudice claims against defendants who were not properly served, this Circuit has held that allowing a plaintiff to file another suit containing the same meritless claims would be inconsistent with the district court's duties. See Simpkins, 108 F.3d at 370.

## II. Constitutional Claims against Defendants in Their Individual Capacities

Anderson styles the first count of his complaint as a claim for damages against defendants in their individual capacities under 42 U.S.C. § 1983. He alleges that defendants are liable under Section 1983 for violating his First and Fifth Amendment rights by terminating his embed status. As defendants correctly argue, however, this claim suffers from a fatal flaw: Section 1983 claims can arise only from actions taken under color of state law. See West v.

Atkins, 487 U.S. 42, 48 (1988) ("To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). "Section 1983 does not apply to federal officials acting under color of federal law." Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1104 (D.C. Cir. 2005) (internal citations omitted). Defendants are all federal employees, and although Anderson claims that they "acted under color of state law," Compl. ¶¶ 22, 52, all of his allegations entail actions by defendants acting under color of federal law. Accordingly, Anderson fails to state a claim upon which relief may be granted under Section 1983.

Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), on the other hand, recognizes "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001). Because the Court is required to construe plaintiff's claims in the light most favorable to him, see Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994), the Court will construe Count I of Anderson's complaint as arising under Bivens, rather than Section 1983. See Jones v. United States, 934 F. Supp. 2d 284, 293 (D.D.C. 2013) (construing plaintiff's claim under Bivens rather than Section 1983). And although the Court lacks personal jurisdiction over the individual defendants, it will analyze the merits of Anderson's constitutional claims because "delaying the inevitable would not . . . [be] in keeping with the Supreme Court's instruction to the lower federal courts 'to weed out' insubstantial Bivens suits 'expeditiously.'" Simpkins, 108 F.3d at 370 (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).

## A. Defendants Former Secretary Gates and Secretary McHugh

To be held liable under <u>Bivens</u>, the defendant must have participated personally in the alleged wrongdoing; liability cannot be premised upon a theory of vicarious liability or respondeat superior.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 676 ("Because vicarious liability is inapplicable to <u>Bivens</u> . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); <u>accord</u> <u>Cameron v. Thornburgh</u>, 983 F.2d 253, 258 (D.C. Cir. 1993).

Anderson's complaint does not allege that former Secretary Gates or Secretary McHugh participated personally in any of the alleged constitutional violations.  Rather, Anderson's claims against these two defendants are based solely on their supervisory statuses.  Compl. ¶¶ 16 ("Gates is a U.S. Secretary of Defense . . . vested with the supervision of military-media public affairs rules, both foreign and domestic"); 17 ("McHugh is a U.S. Secretary of the Army . . . vested with the supervision of military-media public affairs rules, both foreign and domestic").  Former Secretary Gates and Secretary McHugh are not mentioned anywhere else in the complaint.  Moreover, Anderson did not respond to defendants' argument that his claims against former Secretary Gates and Secretary McHugh must be dismissed because he did not allege that they personally participated in the alleged violations, thereby conceding the argument.  <u>Day v. D.C. Dep't of Consumer & Regulatory Affairs</u>, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").  Hence, even liberally construing Anderson's claims under <u>Bivens</u> against former Secretary Gates and Secretary McHugh, they must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**B. Defendants Colonel Bush, Brigadier General Mulholland, and Colonel Julian**

Anderson claims that Colonel Bush was responsible for terminating his embed status, Brigadier General Mulholland was responsible for "approv[ing] the language and charge of the [termination] [m]emorandum[,]" and Colonel Julian was responsible for upholding that termination on appeal. Compl. ¶¶ 36-42; Opp'n at 9. Anderson has thereby alleged that these three defendants personally participated in the alleged constitutional violations. Defendants respond that Brigadier General Mulholland and Colonels Bush and Julian are not liable for the alleged violations because they are entitled to qualified immunity, which "shields [them] from civil damages liability." Reichle v. Howards, --- U.S. ---, 132 S. Ct. 2088, 2093 (2012) (citing Ashcroft v. al-Kidd, --- U.S. ---, 131 S. Ct. 2074, 2080 (2011)). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" al-Kidd, 131 S. Ct. at 2085 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). To overcome a claim of qualified immunity, a plaintiff must show (1) that the facts alleged or shown make out a violation of a constitutional right, and (2) that the right was clearly established at the time of the violation. See Saucier v. Katz, 533 U.S. 194, 201 (2001). The Supreme Court in Pearson v. Callahan, 555 U.S. 223, 236 (2009), modified the Saucier approach such that lower courts may use their discretion to decide which of the two prongs to address first. Accord Reichle, 132 S. Ct. at 2093. Here, Anderson fails to demonstrate a clearly established right, hence the Court need only reach the second prong.

For a right to be clearly established, it must be sufficiently developed under existing law so as to provide an official with sufficient guidance. Anderson v. Creighton, 483 U.S. 635, 640 (1987). The unlawfulness of the officers' actions must, in light of pre-existing law, "be apparent," id., and "existing precedent must have placed the statute or constitutional question

beyond debate," al-Kidd, 131 S. Ct. at 2083.  Anderson claims that when defendants terminated his status as an embed reporter, they violated his First Amendment free speech and freedom of the press rights.  Compl. ¶ 52.  He also claims the defendants violated his Fifth Amendment due process rights when they "depriv[ed] him of a meaningful hearing" in the course of terminating his embed status.  Id. ¶¶ 50-52.  Both of Anderson's claims rely on the validity of his assertion that he has a constitutionally protected right to be an embed journalist.  This Circuit's clear statement that such a right does not exist is therefore fatal to his claims.

In Flynt v. Rumsfeld, 355 F.3d 697 (D.C. Cir. 2004), cert. denied, 543 U.S. 925 (2004), the D.C. Circuit held that the First Amendment does not guarantee to the press a right to be embedded with military units.  There, the Circuit found that "[t]here is nothing we have found in the Constitution, American history, or our case law to support [appellants'] claim" that "there is a First Amendment right for legitimate press representatives to travel with the military, and to be accommodated and otherwise facilitated by the military in their reporting efforts during combat, subject only to reasonable security and safety restrictions."  Id. at 703.  The Circuit reiterated an earlier holding that "'freedom of speech [and] of the press do not create any per se right of access to government . . . activities simply because such access might lead to more thorough or better reporting.'"  Id. (quoting JB Pictures, Inc. v. Dep't of Defense, 86 F.3d 236, 238 (D.C. Cir. 1996)).

Accordingly, although Anderson certainly has a general First Amendment free speech right, he does not have a clearly established right to be embedded with the military in the exercise of that right.  Hence, his claim that defendants' termination of his status as an embed reporter violated his First Amendment rights must fail.[10]

_____

[10] In the facts section of his complaint, Anderson also claims that "U.S. command made five attempts to stop the reporting of . . . adverse-war news, in violation of the Constitution (First Amendment rights) . . . ."  Compl.

Anderson's Fifth Amendment claim fares no better. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.' Only after finding the deprivation of a protected interest do we look to see if the [government's] procedures comport with due process." Gen. Elec. Co. v. Jackson, 610 F.3d 110, 117 (D.C. Cir. 2010) (quoting Amer. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999)). Here, Anderson has not alleged a basis for the Court to find any deprivation of liberty or property. He invokes only his alleged First Amendment right to be an embed journalist as the predicate liberty interest violated for his due process claim. Under this theory, his claim must fail because, given the preceding analysis, Anderson does not have a constitutionally protected right to be an embed journalist. See Yohn v. Coleman, 639 F. Supp. 2d 776, 787 (E.D. Mich. 2007) (court concluded that due process claim failed when based on a non-cognizable First Amendment claim). Accordingly, Anderson has not demonstrated that he had a clearly established due process right at the time of the alleged violations. Colonel Bush, Brigadier General Mulholland, and Colonel Julian are protected by qualified immunity, and Anderson's claims against them must be dismissed.

Count I therefore will be dismissed in its entirety for failure to state a claim upon which relief may be granted.

---

¶ 30. The only facts that Anderson alleges in support of this claim is that "one example is a senior-base commander yelled and warned [Anderson] in a meeting . . . [that he was] 'outside [his] charter' [and] 'chasing a non-story.'" Id. Anderson does not name this unidentified commander as a defendant, nor does he provide any additional information about the other four alleged First Amendment violations. He also states that he "is informed, believes and alleges that [d]efendants' conduct constituted a form of news embargo," id. ¶ 32, but he does not claim that any of the named defendants were in any way involved in the alleged "attempts to stop reporting of . . . adverse-war news," id. ¶ 30. Anderson also does not allege that any of the actions actually prevented him from exercising his First Amendment rights and does not allege facts sufficient to establish a chilling effect. "A pro se complaint must be held to less stringent standards than formal pleadings drafted by lawyers, but even it must plead factual matter that permits the court to infer more than the mere possibility of misconduct." Jones v. Horne, 634 F.3d 588, 596 (D.C. Cir. 2011) (internal quotation marks and citations omitted). To the extent that Anderson intended these additional allegations to represent an independent legal claim, they fail to state a claim upon which relief can be granted.

### III.    Breach of Contract Claims

Anderson asserts that, "[o]n or about March 22, 2010, [he] entered into a contract agreement with the U.S. Army by signing the [ISAF MAGRA] which acts as contract between [Anderson] and the U.S. Army,"  and that defendants breached that "contract" in several ways, causing Anderson "injuries and damages."  Compl. ¶ 55.  A breach of contract claim against defendants in their official capacities is "in all respects other than name, to be treated as a suit against the entity [of which the named defendants are employees]"—here, the U.S. Army and the Department of Defense.[11]  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citation omitted).  As a general matter, "[i]t is axiomatic that the United States [and its agencies] may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  United States v. Mitchell, 463 U.S. 206, 212 (1983); see also FDIC v. Meyer, 510 U.S. 471, 475 (1994) (explaining that, without a specific waiver, the federal government and its agencies are protected from suit by the doctrine of sovereign immunity).  Because Anderson seeks to invoke this federal court's jurisdiction, he bears the burden of establishing its subject-matter jurisdiction, see Lujan, 504 U.S. at 561, and by extension, the burden to demonstrate defendants' waiver of sovereign immunity.

Defendants argue that this Court lacks subject-matter jurisdiction over Anderson's breach of contract claim under the Tucker Act and the Little Tucker Act.  Through the Tucker Act, the United Stated waived sovereign immunity and granted the United States Court of Federal Claims exclusive jurisdiction over contract actions against the government for money damages exceeding $10,000.  28 U.S.C. § 1491(a)(1).  The related Little Tucker Act grants district courts

---

[11] To the extent that Anderson intended to bring his breach of contract claim against defendants in their individual capacities—and it is not clear from the record that he did—those claims would be dismissed for ineffective service of process, as discussed above, and for failure to state a claim because defendants were not parties to any alleged contract in their personal capacities.

concurrent jurisdiction over claims founded on a contract with the United States that seek less than $10,000. Id. § 1346(a)(2). Courts have consistently construed these provisions as "authorizing only actions for money judgments and not suits for equitable relief against the United States." Richardson v. Morris, 409 U.S. 464, 465 (1973); see also Transohio Sav. Bank v. Director, Office of Thrift Supervision, 967 F.2d 598, 608 (D.C. Cir. 1992) (noting that the Tucker Act "has long been construed as waiving sovereign immunity only for claims seeking damages, and not for those seeking equitable relief (except in very limited circumstances [not presented here])") (internal quotation marks and citations omitted);[12] Lee v. Thornton, 420 U.S. 139, 140 (1975) (holding that the Little Tucker Act "empowers district courts to award damages but not to grant injunctive or declaratory relief"). Hence, for a plaintiff to satisfy his burden of establishing a district court's subject-matter jurisdiction under the Little Tucker Act, he must plead a dollar amount in damages, and that amount must not exceed $10,000. See Hafen v. Pendry, 646 F. Supp. 2d 159, 160 (D.D.C. 2009).

Although Anderson asserts that he suffered "damages" from the alleged breaches of contract, Compl. ¶ 55, he does not request money damages anywhere in his complaint. Instead, he requests that the Court "enjoin the [d]efendants to reverse the Memorandum terminating [his] embed accommodation status without procedural due process . . . [and] enter such other relief to which [Anderson] may be entitled as a matter of law or equity, or which the Court determines to be just and proper." Compl. at 16-17. Moreover, neither the MAGRA nor the related Media Ground Rules appear to contemplate money damages. MAGRA, Ex. B. to MTD [ECF No. 13-2]; Media Ground Rules, Ex. A to MTD; see also Haase, 835 F.2d at 906 (holding that the Court

---

[12] The Tucker Act permits the Court of Federal Claims to grant certain equitable relief where an otherwise valid Tucker Act claim seeking money damages from the United States already exists. See 28 U.S.C. § 1491(a)(2); see also Greenhill v. Spellings, 482 F.3d 569, 576 (2007); Taylor v. United States, 73 Fed.Cl. 532, 545-46 (2006).

may look beyond the allegations in the complaint to resolve a motion to dismiss for lack of subject-matter jurisdiction).

Defendants correctly assert that, pursuant to the Little Tucker Act, Anderson's claim based on an alleged contract with the U.S. Army may only be brought in this Court if Anderson seeks monetary damages, and that the amount sought is less than $10,000.  See 28 U.S.C. § 1346(a).  Here, Anderson has only made out a request for equitable relief.  He has not pled a dollar amount of monetary damages or sufficient facts by which to calculate such an amount, and thus he has failed to satisfy his burden to establish subject-matter jurisdiction.  Hence, Anderson's claim lies outside the jurisdiction afforded to this Court.[13]

Because the Court of Federal Claims also cannot entertain contract actions against the United States solely for equitable relief, this Court declines to exercise its authority under 28 U.S.C. § 1631 to transfer the present action to the Court of Federal Claims, as "[i]t would not be in the interest of justice to transfer this case when the Court of Claims would refuse to exercise jurisdiction."  Motorola, Inc. v. Perry, 917 F. Supp. 43, 48 (D.D.C. 1996) (citing A & S Council Oil Co., Inc. v. Lader, 56 F.3d 234, 242 (D.C. Cir. 1995)).

For the foregoing reasons, Count II will be dismissed for lack of subject-matter jurisdiction.[14]

---

[13] To the extent that Anderson intended that the Court construe his breach of contract claim under state law, see Compl. ¶ 60 ("[d]efendants breached the Contract by failing to uphold Wisconsin's law of right to cure a contract . . ."), this Court lacks diversity jurisdiction over it because Anderson has not alleged that the matter in controversy exceeds $75,000—as stated above, he has not alleged any amount of monetary damages.  See 28 U.S.C. § 1332 (requiring the matter in controversy to exceed $75,000 and to be between citizens of different states).  Additionally, the Court exercises its discretion and declines supplemental jurisdiction to hear the claim under 28 U.S.C. § 1367(c)(3) because the Court will dismiss all claims over which original jurisdiction is asserted.

[14] Even if this Court did have subject-matter jurisdiction over Anderson's breach of contract claims, they would likely merit dismissal for failure to state a claim upon which relief can be granted.  To succeed on a contract claim, a plaintiff must demonstrate the existence of a contract.  See Henke v. Dep't of Commerce, 83 F.3d 1445, 1450 (D.C. Cir 1996); Carter v. Bank of Am., 845 F. Supp. 2d 140, 144 (D.D.C. 2012).  "A contract has certain essential elements, to wit, competent parties, lawful subject matter, legal consideration, mutuality of assert and mutuality of obligation."  Henke, 83 F.3d at 1450 (internal citations omitted).  Without deciding the issue, the Court

## IV.    Claims for Declaratory Judgment and Injunctive Relief

Turning last to Anderson's request for a declaratory judgment that "[d]efendants' conduct deprived [him] of his rights under the U.S. Constitution and the laws of the United States[,]" Compl. ¶ 63, the Court points to the "well-established rule that the Declaratory Judgment Act 'is not an independent source of federal jurisdiction.'" C&E Services, Inc. of Washington v. D.C. Water and Sewer Auth., 310 F.3d 197, 201 (D.C. Cir. 2002) (quoting Schilling v. Rogers, 363 U.S. 666, 677 (1960)).  "Rather, the availability of [declaratory] relief presupposes the existence of a judicially remediable right."  Id. (internal quotation marks and citation omitted).  But as explained above, Anderson has no viable constitutional claim.  Having dismissed all of Anderson's other claims, no actual case or controversy remains and thus this Court cannot render a declaratory judgment.  See, e.g., Buchwald v. Citibank, N.A., 2013 WL 5218579, at *7 (D.D.C. Sept. 17, 2013); Seized Property Recovery, Corp. v. U.S. Customs and Border Protection, 502 F. Supp. 2d 50, 64 (D.D.C. 2007).  For the same reason, the Court cannot entertain Anderson's request to "enjoin the [d]efendants to reverse the Memorandum terminating Plaintiff's embed accommodation status without procedural due process."  See, e.g., Coe v. Holder, 2013 WL 3070893, at *2 n.4 (D.D.C. June 18, 2013) (holding that a request for injunctive relief does not assert any separate cause of action); Goryoka v. Quicken Loan, Inc., 2013 WL 1104991, at *3 (6th Cir. Mar. 18, 2013) (holding that a request for injunctive relief is a remedy and not a separate cause of action).

---

notes that Anderson does not appear to have sufficiently alleged the existence of an enforceable contract with the U.S. Army.

Defendants' motion to dismiss Anderson's complaint in its entirety will therefore be granted.[15]

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss will be granted. A separate Order accompanies this Memorandum Opinion.


/s/
—————————————
JOHN D. BATES
United States District Judge

Dated:  December 6, 2013

---

[15] In his opposition to defendants' motion to dismiss, Anderson requests leave to amend his complaint to "cure any defects." Opp'n at 31. This request fails to comply with the law of this Circuit, which requires that a motion for leave to amend a complaint be accompanied by a proposed amended complaint. See Local Civil Rule 15.1 (requiring a motion for leave to amend to include the proposed amended pleading); see also United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1259 (D.C. Cir. 2004) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of [the applicable Federal Rule of Civil Procedure,] Rule 15(a)"). Anderson's request neither included a proposed amended complaint nor indicated that he would be able to plead sufficient facts to state a plausible claim for relief. See Rollins v. Wackenhut Services, Inc., 703 F.3d 122, 131-32 (D.C. Cir. 2012) (affirming district court decision to deny request for leave to amend complaint in identical circumstances). Hence, the Court denies his request for leave to amend.